George D. Niespolo (SBN 72107)
Jennifer Briggs Fisher (SBN 241321)
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Email: gdniespolo@duanemorris.com
         jbfisher@duanemorris.com
Tel:    (415) 957-3000
Fax:    (415) 957-3001

Attorneys for Defendant
Daniel Rosenbledt

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. CR 13-00587 CRB |
| v. | **DANIEL ROSENBLEDT'S SENTENCING MEMORANDUM** |
| DANIEL ROSENBLEDT, | |
| Defendant. | |

Defendant Daniel Rosenbledt, by and through his counsel, George D. Niespolo and Jennifer Briggs Fisher of Duane Morris LLP, respectfully submits the following Sentencing Memorandum.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     TERMS OF THE PLEA AGREEMENT ....................................................................2

III.    THE ENTIRETY OF THE RECORD SUPPORTS MR. ROSENBLEDT'S
        REQUEST FOR PROBATION. ..................................................................................2

        A.      The Presentence Investigation Report ...................................................3

        B.      Mr. Rosenbledt's Substantial Assistance Warrants a Substantial Departure..........4

        C.      Factors Under 18 U.S.C. §3553(a) Support a Variance............................................5

                1.      The Nature and Circumstances of the Offense (§3553(a)(1)). ...................6

                2.      The History and Characteristics of the Defendant (§3553(a)(1)). ..............7

                3.      A Sentence that is Sufficient, But Not Greater Than Necessary
                        (§3553(a)(2)).................................................................................9

                4.      The Need to Avoid Unwarranted Sentence Disparities (§3553(a)(6)) ..... 10

                5.      Imposition of a Fine as a Condition of Probation ...................................... 10

                6.      The Need to Provide Restitution (§3553(a)(7)). ........................................ 11

IV.     CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Gall v. United States*
552 U.S. 38 (2007)................................................................................................5, 10

*Kimbrough v. United States*
552 U.S. 85 (2007)........................................................................................................5

*Pepper v. United States*
562 U.S. 476 (2011)......................................................................................................6

*Pepper v. United States*
562 U.S. 476,490 (2011)..............................................................................................5

*Rita v. United States*
551 U.S. 338 (2007)......................................................................................................5

*United States v. Autery*
555 F.3d 864 (9th Cir. 2009) .......................................................................................9

*United States v. Booker*
543 U.S. 220 (2005)......................................................................................................5

*United States v. Carty*
520 F.3d 984 (9th Cir. 2008) (en banc), *cert. denied* by
*Zavala v. United States*, 553 U.S. 1061 (2008) ......................................................5-6

*United States v. Galloway, et al.*
2016 U.S. Dist. LEXIS 109639, 2016 WL 4269961 ..................................................2

*United States v. Whitehead*
532 F.3d 991 (9th Cir. 2008) .......................................................................................6

**Federal Statutes**

15 U.S.C. § 1..................................................................................................................2

18 U.S.C. § 1349............................................................................................................2

18 U.S.C. § 3553(a) ............................................................................................1, 3, 5-6, 9

18 U.S.C. § 3553(a)(2).............................................................................................9, 12

18 U.S.C. § 3553(a)(2)(D).........................................................................................10

U.S.S.G. § 5B1.1(a)(2)..................................................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S.S.G. § 5K1.1 ................................................................................................................. 2-4

**Rules**

Rule 11(c)(1)(B) .................................................................................................................... 2

I.   **INTRODUCTION**

Daniel Rosenbledt made an important and difficult decision early on in the life of this case and before he was ever indicted.  He pled guilty to two counts of mail fraud and two counts of bid rigging and agreed to fully cooperate with the government in their ongoing foreclosure auctions investigation.  Mr. Rosenbledt was committed to taking full responsibility for his actions and to cooperating to the best of his ability.  As Mr. Rosenbledt understood and appreciated at the time, this meant he would be providing information to the government about people in the industry with whom he had worked for years, people he considered partners and friends.  And that is precisely what he did.

Mr. Rosenbledt was extensively debriefed by the government on no less than four separate occasions.  The meetings were lengthy and Mr. Rosenbledt was asked and answered detailed questions about the foreclosure auctions, the bidding process, the bidders, and the identified properties.  He provided the government with valuable information about his extensive and detailed handwritten property records, upon which the government intended to – and did – rely heavily throughout their investigation and in pursuing indictments of people with whom Mr. Rosenbledt worked.  Mr. Rosenbledt was prepared to testify at trial against the indicted defendants.  He was not given that opportunity, though, because the indicted defendants all ended up pleading guilty.  A significant factor in the indicted defendants' decision to plead guilty and avoid trial was undoubtedly the threat of Mr. Rosenbledt's testimony.

Mr. Rosenbledt is deeply remorseful about his role in the bid rigging scheme.  His conduct in this case is an aberration and does not reflect who he is or how he conducts his personal life or his business.  As expressed in the thirteen character reference letters submitted to the Court on Mr. Rosenbledt's behalf, he is an honest businessman, a devoted son and brother, a supportive father and a generous friend.  These letters also describe Mr. Rosenbledt's regret and remorse about his conduct and the sincere belief of his family and friends that he will never make the same mistakes again.

Given his substantial cooperation with the government in this case, as well as other circumstances which serve as an independent basis for a downward variance under 18 U.S.C.

1

§3553(a), Mr. Rosenbledt respectfully requests that the Court grant him a sentence of probation, with restitution in the amount of $127,808 (as agreed to in the plea agreement and which he is prepared to pay as soon as directed), and a fine within the range agreed to by the parties in the plea agreement ($10,000-$100,000).

A strong case can be made that Mr. Rosenbledt has been on "probation" since as early as 2013 when his counsel began plea discussions with the government that led to his entry of pleas of guilty and his full cooperation with the government that same year, and thus, there is no need for further supervision.  In the event that this Court were to determine that a sentence of probation is appropriate, we would urge the Court to impose a term of less than three years given how Mr. Rosenbledt has turned his shame, remorse, and embarrassment for his conduct into a relentless effort to improve himself and his relationships with others.

## II.     TERMS OF THE PLEA AGREEMENT

Under the terms of the original plea agreement, Mr. Rosenbledt agreed to plead guilty to violations of 15 U.S.C. § 1 (Bid Rigging) and 18 U.S.C. § 1349 (Conspiracy to Commit Mail Fraud). Following the order by Judge Hamilton in *United States v. Galloway, et al.,* 2016 U.S. Dist. LEXIS 109639, 2016 WL 4269961, dismissing the mail fraud charges, which were based on the same theory asserted by the government in the present case, the government agreed to allow Mr. Rosenbledt to withdraw his earlier pleas of guilty and enter a new, revised plea agreement.  On October 11, 2017, pursuant to a revised plea agreement, Mr. Rosenbledt withdrew his original pleas and pled guilty to the two bid rigging charges.

The operative plea agreement entered under Rule 11(c)(1)(B) recommends a total offense level of 17 (24-30 months), a fine of between $10,000 and $100,000, and restitution of $127,808.  It also includes a conditional agreement by the government to make a motion for a downward departure for Mr. Rosenbledt's cooperation under U.S.S.G. §5K1.1.

## III.    THE ENTIRETY OF THE RECORD SUPPORTS MR. ROSENBLEDT'S REQUEST FOR PROBATION.

Careful consideration of the totality of the circumstances surrounding Mr. Rosenbledt's conduct and personal history, his extensive cooperation and early, pre-indictment acceptance of

2

responsibility, and the Probation Officer's recommendation and analysis of §3553(a) factors, call for the imposition of a sentence of probation.

### A. The Presentence Investigation Report

In this case, an appropriate starting place for the consideration of Mr. Rosenbledt's sentence is the Presentence Investigation Report ("PSR"). After reviewing the information submitted by Mr. Rosenbledt, meeting personally with him, evaluating the submission from the government, and assessing the factors under 18 U.S.C. §3553(a), including Mr. Rosenbledt's culpability in comparison to other similarly situated defendants (of which there are many), Probation Officer Jill Spitalieri recommends a custodial sentence of 8 months. *See* PSR, Dkt. 45, at 22.

Most importantly, in making this recommendation, Ms. Spitalieri emphasized that she did not take into account *at all* Mr. Rosenbledt's cooperation with the government. Probation, therefore, concluded that <u>without considering</u> the motion to be made by the government pursuant to U.S.S.G. §5K1.1, or the type, timing, and significance of the cooperation provided, Mr. Rosenbledt should receive a sentence below the advisory guidelines range to include just eight months in custody. *Id.* at 22-23. The guideline range for Offense Level 17 is 24 – 30 months. The eight-month sentence recommended by Ms. Spitalieri falls at the low end of Offense Level 11, representing a reduction of six levels, again, without factoring in Mr. Rosenbledt's cooperation.[1]

Any reasonable, even if modest, downward departure for cooperation is likely to take Mr. Rosenbledt to a sentence within low Zone B or Zone A of the Sentencing Table. For the government to make a §5K1.1 motion and then urge this Court to incarcerate Mr. Rosenbledt requires them to essentially dismiss and ignore Ms. Spitalieri's recommendation and the analysis she does for the variances that get her there. Yet, that is what they have done. We understand from the government that they will be recommending a 40% reduction from the low-end of the guidelines range, resulting in a request that Mr. Rosenbledt be sentenced to 14 months in custody. This recommendation does not reflect the substantial value of Mr. Rosenbledt's cooperation, nor does it

---

[1] Whether the recommendation were 8 months or 14 months, the Offense Level would remain at 11, which is in Zone B of the Sentencing Table and therefore, under a pure guideline analysis, Mr. Rosenbledt would be probation eligible. U.S.S.G. §5B1.1(a)(2).

account for the fact that many other similarly situated defendants who did not provide his level of

cooperation have received non-custodial sentences.  Put another way, while acknowledging his

substantial cooperation in their §5K1.1 motion, the government's recommendation of 14 months

incarceration is 75% higher than the Probation Officer's recommendation, who appropriately gave

no consideration in her recommendation for a §5K1.1 motion yet to be made.  It truly is difficult to

reasonably explain their position.

**B.**     **Mr. Rosenbledt's Substantial Assistance Warrants a Substantial Departure.**

While the government is positioned to evaluate the value of Mr. Rosenbledt's assistance,

certain objective facts clearly support a finding that his cooperation was substantial and stellar.

Beginning in January 2013, undersigned counsel for Mr. Rosenbledt began plea negotiations

with the government.  This was very early on in what would become a seven-year investigation by

the Antitrust Division.  Mr. Rosenbledt accepted responsibility for what he had done and chose to

cooperate with the government, even though – at the time – that meant pleading guilty to both mail

fraud and bid rigging offenses before any charges were brought against him.

Immediately following the entry of Mr. Rosenbledt's plea, he began meeting with the

government.  Over the next year and a half, he met in person with attorneys for the Antitrust

Division on three separate occasions and participated in a phone interview.  In order to adequately

prepare for the government interviews, Mr. Rosenbledt spent several days meeting with his counsel

and doing the work necessary to prepare for the government interviews, including reviewing his

records and other records and going over topics to be covered during the interviews.  He was

committed to providing accurate and complete information.

During these lengthy meetings with the government, he openly and honestly provided

background information on the foreclosure auction process, and described his relationships with his

partners and other bidders, how they conducted business, and his methods of record keeping.

Mr. Rosenbledt was asked and answered detailed questions about specific properties and

transactions of interest to the government.  He also spent considerable time with the government

explaining his own records, including deciphering handwritten notes, describing his record-keeping

methodology, and identifying people, properties and payments referenced in the records.

4

Throughout his period of cooperation, Mr. Rosenbledt remained true to his commitment. He was prepared to testify at the trial of the indicted defendants, and would have done so if called. As the Court knows, after extensive motion practice, all of the indicted defendants he worked with ended up pleading guilty before any trial was held. There is no doubt that the government would agree that the threat of Mr. Rosenbledt's testimony against them was a significant factor in the decision by each of the indicted defendants to plead guilty. In sum, Mr. Rosenbledt's exemplary cooperation assisted the government in its investigation of the case, its ability to bring charges against the indicted defendants, and its avoidance of the need for a lengthy trial.

### C.    Factors Under 18 U.S.C. §3553(a) Support a Variance.

Fully acknowledging and appreciating this Court's expertise in this area and long history with the Sentencing Commission, undersigned counsel will only briefly discuss some of the more relevant legal principles that apply to the following analysis.

Following the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005); *Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); and *Kimbrough v. United States*, 552 U.S. 85 (2007), the basic Federal sentencing framework is now settled:

> (1) It is clear that "the Guidelines are no longer mandatory but are only advisory." *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008) (en banc), *cert. denied* by *Zavala v. United States*, 553 U.S. 1061 (2008).
>
> (2) "[D]istrict courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for "reasonableness." *Pepper v. United States* 562 U.S. 476,490 (2011)

In light of these decisions,

> [t]he overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

*Carty,* 520 F.3d 984, 991. Although the Guidelines are the starting point, "[t]he district court may not presume that the Guidelines range is reasonable." *Id.* The Guidelines are but "one factor among

1    the §3553 factors that are to be taken into account in arriving at an appropriate sentence." *Id.*  Thus,

2    the "district court must make an individualized determination based on the facts."  *Id.*

3    As the Ninth Circuit stated,

4        *Booker* breath[ed] life into the authority of district court judges to engage in
         individualized sentencing within reason in applying the §3553(a) factors to the
5        criminal defendants that come before them.

6    *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (quoting *United States v. Vonner*, 516

7    F.3d 382, 392 (6th Cir. 2008) (en banc)).  The Supreme Court additionally noted its historical

8    emphasis on the principle that "[h]ighly relevant—if not essential—to [the] selection of an

9    appropriate sentence is the possession of the fullest information possible concerning the defendant's

10   life and characteristics." *Pepper v. United States* 562 U.S. 476, 480, (2011). Permitting sentencing

11   courts to consider the widest possible breadth of information about a defendant "ensures that the

12   punishment will suit not merely the offense but the individual defendant." *Id.* at 488 (quoting

13   *Wasman v. United States,* 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).)

14       Based on consideration of the §3553(a) factors set forth below and the need for

15   individualized sentencing, a sentence of probation for Mr. Rosenbledt is "sufficient, but not greater

16   than necessary" to accomplish the goals of sentencing.  To put it more directly, a sentence of

17   incarceration is greater than necessary under the totality of the circumstances of Mr. Rosenbledt's

18   case.

19              1.      **The Nature and Circumstances of the Offense (§3553(a)(1)).**

20       Mr. Rosenbledt did not begin attending trustee sales in San Mateo County on a regular basis

21   until 2008.  He often purchased properties with other investors through joint venture agreements.

22   Mr. Rosenbledt was known to others as someone who worked hard and did his homework.  He knew

23   and understood the real estate market in San Mateo County and carefully researched property

24   information to inform his bidding decisions.  To the contrary, there were many others who showed

25   up at the auctions without any preparation whatsoever and sought to take advantage of the expertise

26   and experience of Mr. Rosenbledt.

27       While he had previously participated in such auctions on a periodic basis in years past, it was

28   not a central part of Mr. Rosenbledt's business.  When the volume of properties increased greatly in

6

2008, so did his attendance at the auctions.  In the preceding years, major financial institutions had made millions of high interest mortgage loans to borrowers, with the knowledge they were not qualified for these loans and ultimately could not repay them.  As a result, many of the properties purchased with these mortgage loans ended up in foreclosure, leading to the increase in volume at the trustee sales.

Over the years, Mr. Rosenbledt had observed people entering into agreements not to bid against each other for money.  But as the number of foreclosed properties increased, so did the number of bidders attending the auctions.  Agreements not to bid became more commonplace and Mr. Rosenbledt and the various persons he invested with at these auctions began participating in such agreements.  These agreements were made on an ad-hoc basis – there was no set cast of characters, no routine, no go-to playbook.  Each day and each property was different, including the bidders.  And not every property purchased involved a payoff agreement.  In fact, throughout the relevant time period (2008 to 2010), more than two-thirds of the purchases of properties made by Mr. Rosenbledt did **not** involve any payoff agreements or bid rigging whatsoever.

At the time, Mr. Rosenbledt viewed the agreements as part of the business of buying properties at foreclosure auctions.  He did not fully appreciate the illegality or wrongfulness of his conduct until confronted by the government at his home in January 2011.  He has since accepted the full weight of responsibility for violating the law and understands the anticompetitive nature of these agreements.

### 2.    The History and Characteristics of the Defendant (§3553(a)(1)).

Mr. Rosenbledt is a native of the San Francisco Bay Area.  He grew up in a stable family, but one that was deeply affected by the early death of his brother, who suffered from a drug and alcohol addiction that eventually claimed his life with an overdose.  Mr. Rosenbledt maintains a very close relationship with his sister and his mother, who is 94 years old and relies heavily on Mr. Rosenbledt for companionship, financial support, and medical care, as he takes her to doctor's appointments as needed and manages her care.  Mr. Rosenbledt is also close to his three adult children, all of whom are very concerned about his situation.  Despite being long-since divorced from their mother,

///

1  Mr. Rosenbledt has supported his children through numerous hardships, as described in their letters

2  of support submitted herewith.

3         Mr. Rosenbledt began his career in real estate after graduating from San Jose State

4  University in 1975.  He began working as a real estate agent under the wing of the man who would

5  eventually become his father-in-law.  Mr. Rosenbledt started out as a salesman selling homes to

6  young families.  He then became a licensed broker and eventually started his own real estate

7  company.  Throughout the 1990s, he was listing and selling properties.  Mr. Rosenbledt transitioned

8  from being a real estate agent and broker to an investor in the late 1990s.  He began purchasing

9  properties and devoted a substantial amount of care, interest, money and time to rehabilitating

10  properties for resale.  He took great pride in remodeling homes and improving neighborhoods,

11  leading to increased property values throughout San Mateo County.  He built a successful business

12  that, until 2008, did not involve a high volume of properties purchased at trustee sales.

13         As expressed repeatedly in the letters from friends, family and business colleagues submitted

14  to the Court for consideration with this Memorandum, Mr. Rosenbledt is an honest, loyal and caring

15  person.  He is also incredibly generous and has shown throughout his life a willingness to help others

16  in their time of need.  He has provided considerable emotional and financial support to his family

17  and friends without hesitation.

18         Mr. Rosenbledt is also deeply remorseful about his conduct.  As emphasized in his letters of

19  support, everyone around Mr. Rosenbledt witnessed his regret for what he did and his demonstrated

20  acceptance of responsibility for his actions through the changing of his ways and acknowledgment of

21  the harm to others that can result from such conduct.

22         Additionally, Mr. Rosenbledt respectfully requests that the Court consider his family

23  responsibilities in determining a sentence.  Mr. Rosenbledt is responsible for his 94-year old mother,

24  Eleanore, and for responding to her various medical needs and appointments, which are many given

25  her age.  A sentence of probation rather than incarceration will allow Mr. Rosenbledt to continue to

26  care for his mother's needs, as he does now.

27  ///

28  ///

**3.    A Sentence that is Sufficient, But Not Greater Than Necessary (§3553(a)(2)).**

Section 3553(a) requires that the Court impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

Mr. Rosenbledt pled guilty to a federal felony, which carries considerable collateral consequences.  He has suffered reputational damage and emotional hardship due to this case, all of which he knows he brought upon himself.  There are members of the business community, friends, and financial institutions that have balked at being associated with Mr. Rosenbledt, thus affecting his ability to continue his business.  He regrettably admits that his second marriage fell apart as a result of this case, which was devastating to Mr. Rosenbledt and his former wife.  His family has been impacted by the stigma attached to his name, especially since there are no other known Rosenbledts. For the past seven years since this case began, Mr. Rosenbledt has agonized over his mistakes and has done everything he can to learn from them and make positive changes in his personal and business life.

With the exception of an arrest for a minor infraction 25 years ago, Mr. Rosenbledt has always been a law-abiding citizen and respected member of the community.  Given the aberrant nature of this conduct, a variance is appropriate. *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (court can consider defendant's lack of criminal record as a mitigating factor during sentencing.)

Mr. Rosenbledt's conduct in this case does not reflect who he is as a person.  There is nothing in this matter or sentencing that supports the notion that he poses any credible risk of recidivism.  For the past seven years, since this case began, Mr. Rosenbledt has followed the law and grown his business entirely outside of the bid rigging scheme.  Even the PSR notes that given Mr. Rosenbledt's age and background, "it is unlikely that he would be a risk to reoffend." *See* PSR, Dkt. 45, at 23.  Given that Mr. Rosenbledt is unlikely to reoffend, incarceration is unnecessary to

///

deter him from future criminal conduct or to protect the public from any further crimes.  *See Gall v. United States*, 552 U.S. 38, 59 (2007).  He is an intelligent man who has learned his lesson.

Finally, as acknowledged in the PSR, Mr. Rosenbledt has medical and emotional health conditions that require ongoing treatment.  *See* PSR, Dkt. 45, at 20.  He was diagnosed with severe obstructive sleep apnea in 2013 and currently uses various medical devices to treat this condition.  Mr. Rosenbledt is also being treated by a psychiatrist for depression, which was onset by the circumstances of this case and the resulting consequences.  We would urge the Court to consider Mr. Rosenbledt's need for medical care as a further basis for a variance below the guideline range under 18 U.S.C. § 3553(a)(2)(D).

### 4.    The Need to Avoid Unwarranted Sentence Disparities (§3553(a)(6))

Under Section 3553(a)(6), when imposing a sentence, the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  Ms. Spitalieri gave serious consideration to this factor in making her recommendation of 8 months in custody.  *See* PSR, Dkt. 45, at 24.  As the PSR explains, numerous defendants have already been sentenced by Judge Hamilton in similar bid rigging cases with circumstances (the "Round Robin" cases) that many consider more egregious than the conduct in the San Mateo cases.  The vast majority of the cases before Judge Hamilton ended with pleas of guilty, some before the respective defendant was charged and some after an indictment was returned.  Judge Hamilton tried a handful of the cases.  As noted above, Mr. Rosenbledt pled guilty and agreed to cooperate early and before any attempt was made to indict him.  Most all of the defendants who pled guilty before Judge Hamilton received non-custodial sentences.  *Id.*

Based on a high-level review of 41 of the judgments in the Oakland cases wherein the respective defendants pled guilty before Judge Hamilton, 35 received non-custodial sentences.  Thirty-two of the defendants who received non-custodial sentences pled guilty prior to indictment and agreed to cooperate with the government, as did Mr. Rosenbledt in this case.

### 5.    Imposition of a Fine as a Condition of Probation

In the plea agreement, the government agreed to recommend a fine in this matter in the range of $10,000 - $100,000.  As a result of recent discussions with the government, undersigned counsel

10

expects that the government will recommend a fine on the low end of that range.  We agree that the fine should be on the low end of the agreed-upon range.  Specifically, in the initial plea agreement wherein Mr. Rosenbledt agreed to plead guilty to four counts, including Title 18 charges and a forfeiture provision, the government agreed to recommend a fine within the above-mentioned range. In the revised plea agreement, notwithstanding the removal of the Title 18 charges and the forfeiture provision, the government again agreed to recommend a fine within the above-mentioned range.

The PSR recommends the imposition of a fine more than 100 times greater than the low end fine suggested in the government's range in the plea agreement.  Such a fine is immensely disparate from those imposed by Judge Hamilton for similarly situated defendants – those who pled guilty and cooperated early.  Recognizing that the volume of commerce number for Mr. Rosenbledt is on the higher end in these cases, the goals meant to be achieved at sentencing are not advanced with the imposition of a fine that can be reasonably described as egregious or overly punitive.  The imposition of anything close to the fine recommended in the PSR could be accurately described as the imposition of a grave sentence that is far more than is necessary to accomplish the goals articulated in §3553(a)(2) and (3).  Imposing a fine commensurate with that of others and consistent with the agreement of counsel for the parties, who know and understand the conduct and circumstances of Mr. Rosenbledt's actions, would more reasonably fit the needs for punishment and deterrence in this case.

6. **The Need to Provide Restitution (§3553(a)(7)).**

Again, in the plea agreement the parties agreed to recommend that the Court should order Mr. Rosenbledt to pay $127,808 in restitution.  *See* PSR, Dkt. 45, at 7-8.  Mr. Rosenbledt is fully prepared to pay this restitution as soon as directed.

IV.     **CONCLUSION**

For the reasons set forth above, Mr. Rosenbledt respectfully requests that the Court impose a sentence of probation, and as conditions of the period of probation order that Mr. Rosenbledt pay restitution in the amount of $127,808, and further pay a fine within the range agreed to in the plea

///

///

1   agreement.  As explained and demonstrated above, such a sentence is sufficient, but not greater than

2   necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

5   DATED: April 19, 2018                              _____/s/  Jennifer Briggs Fisher_____
                                                       GEORGE NIESPOLO
6                                                      JENNIFER BRIGGS FISHER

7                                                      Counsel for Defendant Rosenbledt